UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

STEPHEN JOHNSON; ROBYN
JOHNSON; STEPHEN JOHNSON PPA
AND BEST FRIEND OF P.J., A MINOR
CHILD,

    Plaintiffs,

    v.

TEXTRON AVIATION, INC.,

    Defendant.

Case No. 23-2378-DDC-RES

## MEMORANDUM AND ORDER

This matter comes before the Court on Plaintiffs'[1] Motion to Stay. ECF No. 12. Defendant Textron Aviation Inc. ("Defendant" or "Textron") opposes the Motion. ECF No. 16. For the reasons explained below, the Motion is denied. The Court nonetheless exercises its inherent authority to set deadlines and control the scope of discovery for efficient case management, as discussed in further detail below.

**I.    BACKGROUND**

This case and at least seven other cases pending in two Connecticut state courts arise from an airplane crash on September 2, 2021, in Farmington, Connecticut, whereby a Citation 560XL aircraft crashed into the back of the Trumpf, Inc. factory building where Plaintiff Stephen Johnson ("Johnson") was working at the time. ECF No. 1 at 1; ECF No. 13 at 1. According to the complaint, the pilot in command set the parking brake in the aircraft but did not fully depress the

---

[1] The Motion uses both the singular form of "Plaintiff" and the plural form. The Court presumes that the use of the singular form is an oversight in that all Plaintiffs are aligned and represented by the same counsel, and all Plaintiffs move for a stay.

aircraft's toe breaks, which meant that the parking brake was not fully engaged. ECF No. 1 at 16. The pilot was able to taxi and attempt takeoff even though the parking brake remained partially engaged, but the parking brake prevented the aircraft from achieving the necessary speed for a safe takeoff. *Id.* As a result, the aircraft crashed into the Trumpf building. *Id.* at 17. The pilot, co-pilot, and two passengers perished, and Johnson and a coworker sustained injuries.

Johnson, his spouse—Plaintiff Robyn Johnson—and their minor child filed this case against Textron in the District of Kansas on August 31, 2023. *See* ECF No. 1. According to the complaint, Textron is the successor in interest and in liability to the Cessna Aircraft Company, which manufactured the aircraft at issue. *Id.* at 4-5. Plaintiffs allege that the aircraft was defective and unreasonably dangerous for multiple reasons, as set out in the complaint. These include that: the aircraft's parking brake could remain partially engaged in a manner causing dangerous drag from the brake and negatively impacting aircraft takeoff performance; the pull knob was obscured from view by the co-pilot, preventing a cross-check confirmation of the proper takeoff configuration; the aircraft was not equipped with a warning annunciator light to alert the pilots that the parking brake was engaged; and the aircraft's pilot's operating handbook and/or an adequate checklist failed to address these defects, among multiple other issues set out in the complaint. *Id.* at 17-27. Johnson asserts claims for products liability (Count 1) and recklessness under a Connecticut statute (Count 2). *Id.* at 17-28. Johnson, his spouse, and minor child assert loss-of-consortium claims (Counts 3-5). *Id.* at 28-30.

On September 1, 2023, Johnson additionally filed a case in Connecticut state court: *Johnson, et al. v. Textron Aviation, Inc., et al.* ECF No. 13 at 3. Johnson states that in that case, he and other plaintiffs have brought claims against Textron; Brook Haven Properties, LLC ("Book Haven"), which owned the aircraft; Interstate Aviation, Inc. ("Interstate Aviation"), the

corporation that employed the pilots and conducted the flight; the pilot and the co-pilot (presumably their estates); and "the Havilands," which the Court presumes means the Brook Haven principals, although this is not clear. *Id.*

Plaintiffs' Motion briefly summarizes the other litigation pending in Connecticut state court, including cases brought against Textron, Interstate Aviation, and Brook Haven, which include:

- *Sylvester, as personal representative of the Estate of Courtney Haviland and William Shriner v. Interstate Aviation, Inc., et al.*, filed by the estates of the passengers on March 27, 2023;

- *Morrow, et al. v. Textron Aviation, Inc., et al.*, filed by the co-pilot's spouse and estate on March 29, 2023;

- *O'Leary, et al. v. Brook Haven Properties, LLC, et al.*, filed by the pilot's estate and other unspecified plaintiffs on August 18, 2023;

- *The Insurance Company of the State of Pennsylvania, et al.*, v. *Textron Aviation, Inc.*, *et al.*, filed by Trumpf's insurer and subrogee and other unspecified plaintiffs on August 29, 2023;

- *The Connecticut Lights and Power Company v. Interstate Aviation, Inc., et al*., filed by a utility company on September 15, 2023, seeking damages for alleged damage to its assets caused by the crash; and

- *Lennehan v. Interstate Aviation, Inc., et al.*, filed by Johnson's coworker on September 20, 2023.

*Id.* at 2-4.

Textron filed motions to dismiss for lack of personal jurisdiction on May 18, 2023, in *Morrow*, and on May 19, 2023, in *Sylvester*. *Id.* at 3. Those motions remain pending, and Textron is expected to contest personal jurisdiction in the other Connecticut cases. *See* ECF No. 16 at 2. According to the Motion, the parties in the case with the first-filed motion to dismiss are resolving

disputes concerning the scope and substance of jurisdictional discovery, and the plaintiff in that case has not yet filed a response to the motion. ECF No. 15 at 3. The Motion speculates that many of the plaintiffs in the pending Connecticut cases will seek to participate in jurisdictional discovery as well. *Id.* at 5.

On September 22, 2023, the Court set this case for a scheduling conference on October 25, 2023. ECF No. 7. But two days prior to the scheduling conference, Plaintiffs filed the present Motion to Stay, which requests that the Court entirely stay this case pending the Connecticut courts' rulings on Textron's pending and anticipated motions to dismiss for lack of personal jurisdiction. ECF No. 12 at 1. At the scheduling conference, the Court discussed the Motion with the parties, discussed the parties' respective positions on staying discovery, and set an expedited briefing schedule. ECF No. 15. As stated on the record, both sides believe that it could take up to a year for the Connecticut courts to decide the issue of personal jurisdiction over Textron. Because the outcome of the Motion had the potential of altering or staying case management deadlines, the Court continued the scheduling conference pending the resolution of the Motion. *Id.*

As discussed during the scheduling conference, Plaintiffs first filed a case in this District and then filed the *Johnson* case in Connecticut state court. Plaintiffs explain that they "hedged against waiting for the savings state if Textron succeeds on its personal jurisdiction argument in Connecticut," instead opting to file this case in the District of Kansas and to file a separate case in Connecticut state court. ECF No. 13 at 5. Plaintiffs believe that if Textron is successful on its personal jurisdiction arguments in Connecticut, all of the now-pending Connecticut cases would need to be refiled in Kansas, with Textron likely to remove to this District any cases refiled in Kansas state court. *Id.* If the Connecticut courts find that Textron is subject to personal jurisdiction

4

in Connecticut, Plaintiffs "will withdraw this case," *id.*, which Plaintiffs re-confirmed during the scheduling conference.

## II.     DISCUSSION

### A.     The *Colorado River* Doctrine

Plaintiffs' Motion and accompanying memorandum seek a general stay of discovery, relying on the first-to-file rule and this District's case law.  ECF Nos. 12 and 13.  In response, Defendant cites the *Colorado River* doctrine, ECF No. 16, an abstention doctrine "empowering district courts to stay or dismiss a federal suit pending the resolution of a parallel state court proceeding."  *HSBC Bank (Uruguay) S.A. v. Seaboard Corp.*, No. 21-CV-2435-DDC-TJJ, 2022 WL 4447416, at *16 (D. Kan. Sept. 23, 2022) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976) (internal quotations omitted)).

Defendant, however, does not explain why this abstention doctrine provides the appropriate legal framework for addressing Plaintiffs' Motion when Plaintiffs did not invoke or even mention the *Colorado River* doctrine in their Motion or at the October 25, 2023 scheduling conference when the Court discussed the parties' positions on the Motion.  ECF No. 15.  In reply, Plaintiffs concede that Defendant "apparently is correct" that the first-to-file rule—raised in Plaintiffs' opening brief—applies to cases proceeding in different federal district courts and that *Colorado River* is "[p]erhaps more instructive[.]"  ECF No. 17 at 1-2.

There are two reasons why the Court will not stay this case based on the *Colorado River* doctrine.  *First,* "[g]enerally, the Court will not consider relief requested for the first time in a reply brief."  *In re Bank of Am. Wage & Hour Emp. Pracs. Litig.*, 275 F.R.D. 534, 537 (D. Kan. 2011) (citing *M.D. Mark, Inc. v. Kerr-McGee Corp.,* 565 F.3d 753, 768 n.7 (10th Cir. 2009); *Minshall v. McGraw Broad. Co.,* 323 F.3d 1273, 1288 (10th Cir. 2003)).  Although the Court understands that

Plaintiffs' reply brief addresses an issue raised in the Defendant's response brief, Plaintiffs did not cite to or move for a stay based on the *Colorado River* doctrine in its Motion. The reply brief is neither the appropriate time nor the appropriate vehicle to raise—for the first time—a basis for relief.

*Second*, even if Plaintiffs invoked the *Colorado River* doctrine in their opening motion, no party presented sufficient information on this record for the Court to conclude that the *Colorado River* doctrine applies here. Before considering the *Colorado River* factors, the Court must first determine whether the federal and state proceedings are parallel. *See Allen v. Bd. of Educ., Unified Sch. Dist. 436*, 68 F.3d 401, 403 (10th Cir. 1995) ("Before reaching the abstention issue, the district court must determine whether the state and federal proceedings are parallel." (internal quotations omitted)); *see also United States v. City of Las Cruces*, 289 F.3d 1170, 1182-83 (10th Cir. 2002) ("Requiring district courts to first determine whether the federal and state proceedings are parallel before considering the other *Colorado River* factors is consistent with the narrowness of the doctrine."); *Fox v. Maulding*, 16 F.3d 1079, 1082 (10th Cir. 1994) (reversing the district court's dismissal under the *Colorado River* doctrine because, among other reasons, the district court had not explained why the state and federal proceedings were parallel and directing that "[o]n remand, the district court must first determine whether the state and federal proceedings are parallel . . . ").

While the parties have briefed some of the *Colorado River* factors, they did not directly address the threshold issue of whether the federal and state proceedings are truly parallel. Defendant seemingly concludes that the Connecticut litigation is parallel without undertaking the analysis required for such a conclusion. *See, e.g.,* ECF No. 16 at 3 ("When there is parallel litigation in state court . . . ."). But Defendant argues elsewhere in its brief that the state court litigation cannot end the parties' dispute because "the Connecticut court does not have jurisdiction

over [Textron] so it cannot end the parties' dispute." *Id.* at 7. Plaintiffs' reply addresses certain factors but does not mention or address the requirement of parallel proceedings or the facts that would supporting a finding of parallel proceedings. *See generally* ECF No. 17.

"Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Allen*, 68 F.3d at 403. The court must "examine the state proceedings *as they actually exist* to determine whether they are parallel to the federal proceedings[.]" *Id.* (emphasis in original). The test for whether claims are substantial similar "is not whether all claims arise out of the same event, general facts or subject matter" but rather, "when there is a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court." *Maestas v. Seidel*, No. 16-CV-00614 WJ/WPL, 2016 WL 8290797, at *2 (D.N.M. Sept. 6, 2016).

Because of the nature of the parties' briefing, it is unclear whether the parties contend that Johnson's pending Connecticut state court case is the relevant parallel proceeding or whether they contend that all of the pending state-court proceedings are parallel. As set out in the background section, it is not clear on this record the identities of all of the plaintiffs and defendants in the Connecticut state-court cases—including Johnson's own Connecticut state-court case—or the contours of any claims in those cases. In sum, the record lacks information from which the Court could conclude that substantially the same parties are litigating substantially the same issues in different forums and that there is a substantial likelihood that the Connecticut cases will resolve all claims in this matter. Because of the failure to establish that the state and federal proceedings are truly parallel, the Court will not address "whether extraordinary circumstances warrant withholding the exercise of federal jurisdiction" in this case pursuant to the *Colorado River* factors. *Fox*, 16 F.3d at 1082.

7

### B. Plaintiffs' Request for a General Stay

Because Plaintiffs did not move for a stay based on the *Colorado River* doctrine or establish that they are entitled to a stay under this doctrine, the Court will address the bases for a stay that Plaintiffs invoked in their Motion: (1) the first-to-file rule; and (2) arguably a general stay outside of the context of a pending dispositive motion filed in this case.[2]  *See also Kramer v. Textron Aviation, Inc.*, No. 20-2341-HLT-GEB, 2021 WL 4902249, at *3 (D. Kan. Oct. 21, 2021) (applying the legal standard for a motion to stay outside of the context of a pending dispositive motion in a case involving related litigation pending in state court). As discussed below, the first-to-file rule has no application here, and the factors typically evaluated for a general stay weigh against granting a wholesale stay.

#### 1. The First-to-File Rule

In their opening brief, Plaintiffs rely on *Ed Tobergte Associates, Inc. v. Zide Sport Shop of Ohio, Inc.*, 83 F. Supp. 2d 1197 (D. Kan. 1999), for their assertion that "this action should be stayed." ECF No. 13 at 6. As explained in *Ed Tobergate*, "[t]he first-to-file rule provides that the court where jurisdiction first attaches should make the determination of the appropriate venue to decide the case, and the second court will decline to act until proceedings in the first court terminate." *Id.* at 692. The rule applies to federal courts, "as courts of coordinate jurisdiction and equal rank, which must be careful not to interfere with each other's affairs." *Buzas Baseball, Inc. v. Bd. of Regents of Univ. Sys. of Georgia*, 189 F.3d 477 (10th Cir. 1999). "[T]he overwhelming majority of cases have concluded that the federal first-to-file rule does not apply where the first-

---

[2] The Court interprets Plaintiffs' Motion as invoking a generalized stay based on Plaintiffs' motion and Plaintiffs' comments during the scheduling conference, which centered around convenience to the parties and the need to avoid duplicative or piecemeal discovery.

filed case is pending in state court." *Tinnin v. Sutter Valley Med. Found.*, 647 F. Supp. 3d 864, 871 (E.D. Cal. 2022) (collecting cases).

In their reply, Plaintiffs acknowledge that "the first-to-file rule only applies to federal actions in competing jurisdictions." ECF No. 17 at 1. While Plaintiffs assert that the first-to-file rule is "permissive," *id.,* Plaintiffs do not cite to any authority that the rule should be invoked here, where Plaintiffs first filed a case in federal court and then filed a second case in state court. To the extent Plaintiffs claim the relevant first case is a case filed by other parties in Connecticut, Plaintiffs additionally fail to provide any authority that the first-to-file rule should apply in that context either. The Court therefore does not find a basis for a wholesale stay of this federal litigation pursuant to the first-to-file rule.

### 2. General Stay of Discovery

The Court has "broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *see also Baca v. Berry*, 806 F.3d 1262, 1269-70 (10th Cir. 2015) ("[T]he district court has the power to stay proceedings pending before it and to control its docket for the purpose of economy of time and effort for itself, for counsel, and for litigants." (quotation omitted)). The Tenth Circuit is clear that "the right to proceed in court should not be denied except under the most extreme circumstances." *Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983).

Outside of the context of a request to stay pending a decision on a dispositive motion filed in the case at hand,[3] judges in this District have considered five factors in determining whether to

---

[3] This District employs a different framework when considering a stay pending a ruling on a dispositive motion filed in the same case. *See, e.g., Simmons v. Cline*, No. 20-3096-HLT-ADM, 2021 WL 1650270, at *2 (D. Kan. Apr. 27, 2021) ("A stay may be appropriate, however, if (1) the case is likely to be finally concluded via the dispositive motion; (2) the facts sought through discovery would not affect the resolution of the dispositive motion; (3) discovery

grant a stay, including the "(1) non-movant's interests in proceeding expeditiously with the action and the potential prejudice to the non-movant of a delay; (2) the burden on the movant if the stay is denied; (3) the convenience to the court; (4) the interests of persons not parties to the litigation; and (5) the public interest." *CCA Recordings 2255 Litig. v. United States*, No. 19-2491-JAR-JPO, 2021 WL 2104980, at *2 (D. Kan. May 25, 2021) (internal brackets omitted).

As discussed below, these factors weigh against granting a wholesale stay.

### a. Defendant's Interests in Proceeding Expeditiously and Potential Prejudice of a Delay

Defendant argues that staying this case "would cause delayed and protracted disposition of disputes and allow relevant evidence to go stale, causing increased expense and delay to the parties and the court[.]" ECF No. 16 at 2. According to Defendant, a stay heightens the risk that witnesses' memories would fade, they could relocate, or documents could become misplaced or destroyed. *Id.* at 5. Defendant argues that this case should move forward because it wishes to resolve Plaintiffs' claims and to vindicate its product. *Id.* at 2.

These articulated prejudices are only exacerbated by the potential length of the stay Plaintiffs seek. At the time of the briefing on this Motion, Textron had yet to file motions to dismiss for lack of personal jurisdiction in all of the pending Connecticut cases, including in the *Johnson* Connecticut case. Moreover, as the parties stated during the scheduling conference, even in the cases in which Textron had moved to dismiss, the parties anticipate months of jurisdictional

---

on all issues posed by the complaint would be wasteful and burdensome; or (4) the dispositive motion raises issues as to a defendant's immunity from suit."). In their Motion, Plaintiffs do not brief these factors or otherwise suggest that this standard would apply here, where a dispositive motion, filed in a related state case, is anticipated. Because of this, the Court applies the standard set out above.

10

discovery, followed by briefing. In total, Plaintiffs anticipated that the process could take more than a year, if not longer.

A delay of up to a year is far too long for a wholesale stay of this case. *See Kramer*, 2021 WL 4902249, at \*4 (concluding this factor weighed against a stay based on similar arguments and noting that "[a]llowing time to pass without discovery only increases the potential burden to not only defendants, but to all parties. Any discovery which proceeds on the merits of the claims will occur in whichever forum this case proceeds, between the same parties named in both courts, and will therefore not be wasteful"). This factor weighs against a wholesale stay.

### b. Burden on Plaintiffs if a Stay is Denied

As the party requesting the stay, Plaintiffs bear the burden to articulate a hardship that would occur were this case to move forward. *Kruse v. Gerdisch*, No. 23-1153-TC-RES, 2023 WL 6880136, at \*2 (D. Kan. Oct. 18, 2023) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)). Despite requesting a wholesale stay of discovery, Plaintiffs' opening Motion is devoid of any concrete examples of how it would be harmed if this case—which Plaintiffs *intentionally* filed first in this District— moved forward. In reply, Plaintiffs provide the example of duplicative discovery in that Plaintiffs could be forced to depose Defendant in this case and potentially in the Connecticut case, resulting in Plaintiffs paying for two depositions of the same witness. ECF No. 17 at 3-4. Although the Court acknowledges this concern, this potential prejudice stems from Plaintiffs' decision to file two related cases in different jurisdictions. The prospect of duplicative discovery was foreseeable.

In their reply, Plaintiffs "acknowledge written discovery should proceed," and they propose a more limited stay of this litigation. *Id.* at 3. Ultimately, while the Court finds that Plaintiffs

11

could suffer some burden if wholesale discovery were to proceed, staging discovery with tailored deadlines, as discussed in Subsection C below, can materially address any burden on Plaintiffs.

### c. The Court's Convenience

No party addresses this factor. Nevertheless, "[t]he court has an interest in judicial efficiency in terms of managing its caseload." *Stohr v. Scharer*, No. 17-1018-JWB, 2018 WL 2427427, at *3 (D. Kan. May 30, 2018). The Court does not find that a wholesale stay will save the Court time, effort, or resources as this case will continue to be litigated in either this District or elsewhere. While the Court will not speculate as to the outcome of the jurisdictional issues in Connecticut, the Court finds that a wholesale stay here may "only postpone the court's work, thereby frustrating the court's strong interest in moving its docket." *Spears*, 2012 WL 12837278, at *3 (citation omitted). The Court therefore finds that this factor weighs against a wholesale stay.

### d. Interests of Non-Parties

Plaintiffs argue that if this case moves forward, it could prejudice other plaintiffs who may ultimately end up litigating their cases in the District of Kansas, but they provide no concrete examples. ECF No. 13 at 5-6. Any potential prejudice to the parties to the Connecticut cases can be addressed by delaying certain discovery in this case, as explained below. Moreover, coordination between the parties in this case and in Connecticut could address any such concerns. Because of these possible solutions, this factor weighs against a wholesale stay.

### e. Public Interest

No party has identified any public interest, but "the public has a general interest in prompt resolution of claims." *Spears*, 2012 WL 12837278, at *3; *Kramer*, 2021 WL 4902249, at *4 (recognizing that other courts and judges in this District have recognized that "the public has a

12

general interest in the prompt resolution of claims." (citation omitted)). This factor is neutral or weighs against a wholesale stay.

## C. Narrowed Discovery and Adjustments to Other Case Management Deadlines

The above factors weigh against granting Plaintiffs' request for a wholesale stay of this litigation, and so the Motion is denied. That said, the Court has wide latitude to fashion appropriate deadlines and to control the course and scope of discovery for efficient case management. *See, e.g.*, Fed. R. Civ. P. 26(b)(1) (defining the scope of discovery "[u]nless otherwise limited by court order"); Fed. R. Civ. P. 26(b)(2)(A) (explaining that the court may alter the limits in these rules on the number of depositions and interrogatories or on the length of depositions); Fed. R. Civ. P. 26(b)(2)(C) (authorizing the court to limit the frequency or extent of certain discovery under certain circumstances); *see also Kruse*, 2023 WL 6880136 at *5 (denying a motion to stay but exercising the court's discretion to narrow the scope of discovery while a motion to transfer remained pending); *Kramer*, 2021 WL 4902249, at *4 (denying a motion to stay discovery and explaining that the case would "proceed with scheduling and discovery, however slowly it may be necessary to accommodate any changes in the [state court action]"). As Defendant notes, this Court has in other cases recognized the efficiencies to be gained by allowing limited discovery to go forward when a case will proceed in one of two forums and the discovery would be needed in either forum.[4]

Although Plaintiffs' Motion seeks a wholesale stay of the litigation and Defendant believes all aspects of the case should proceed, ultimately both sides acknowledge that some discovery

---

[4] *See, e.g., Kruse*, 2023 WL 6880136, at *3 (D. Kan. Oct. 18, 2023) (finding that limited discovery should be allowed pending a decision on a motion to transfer because "regardless of whether this case is transferred, such discovery can be used in this Court or in Indiana, and the discovery may be relevant to either an Indiana or Kansas medical malpractice screening panel").

13

taken now could be useful in either forum. ECF No. 16 at 5 (Defendant arguing that "at least the written discovery in Kansas can be used in Connecticut."); ECF No. 17 at 3-4 (Plaintiffs acknowledging that limited discovery could go forward). As relayed during the scheduling conference, the Court recognizes certain efficiencies to be gained by staging case-management deadlines in a manner that avoids duplicative or otherwise inefficient discovery.

To that end, the Court orders the parties to meet and confer regarding proposed scheduling order deadlines and agreements for narrowed discovery to go forward in this District. On or before **December 1, 2023**, the parties shall submit to the Magistrate Judge's chambers a revised proposed scheduling order and a redline version showing all changes to the form scheduling order. At a minimum, the proposed scheduling order must contain jointly proposed deadlines for at least the following events: 1) submission of a proposed protective order; 2) exchange of documents identified in each party's Fed. R. Civ. P. 26(a)(1) initial disclosures; 3) Plaintiffs' settlement proposal; and 4) Defendant's settlement counter-proposal. The Court additionally orders the parties to propose reasonable limitations on written discovery and to discuss whether any non-party discovery is needed at this time. The Court also orders the parties to discuss Plaintiffs' proposal that "their individual depositions may be taken" and to discuss whether any additional depositions should proceed. Finally, the parties must discuss the feasibility of any expert discovery at this time. Absent an agreement between the parties, the Court is unlikely to order expert discovery outside of expert testimony related to Plaintiffs' economic and personal injuries.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Stay (ECF No. 12) is **DENIED**. The parties shall submit a revised proposed scheduling order as directed above.

**IT IS SO ORDERED.**

Dated: November 15, 2023, at Topeka, Kansas.

        /s/ Rachel E. Schwartz
        Rachel E. Schwartz
        United States Magistrate Judge